# EXHIBIT 1

No. 25-1466

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

ASTRAZENECA PHARMACEUTICALS LP,

Plaintiff-Appellant,

v.

PHILIP WEISER, *in his official capacity as Attorney General of Colorado*, *et al.*,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Colorado
[District Court Case No. 1:25-cv-2685 (Chief Judge Philip A. Brimmer)]

---

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
## IN SUPPORT OF APPELLANTS AND REVERSAL

---

*Of Counsel:*

ELIZABETH C. KELLEY
*Deputy General Counsel*
*U.S. Department of Health and*
*Human Services*

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant*
*Attorney General*

MICHAEL S. RAAB
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................ii

GLOSSARY.................................................................................................vii

INTRODUCTION AND INTEREST OF AMICUS CURIAE..............................1

STATEMENT OF THE CASE.........................................................................2

    A.    The 340B Program ..........................................................................2

    B.    The Colorado 340B Contract Pharmacy Protection Act ..........................8

    C.    Prior Proceedings.........................................................................10

ARGUMENT ..............................................................................................11

I.    The Supremacy Clause prohibits Colorado from enforcing the Act. .................11

    A.    Colorado's law is preempted by Section 340B and violates the intergovernmental immunity doctrine. .......................................................11

    B.    State laws like the Act risk disincentivizing Medicare and Medicaid participation...........................................................................16

II.    The district court erred in denying a preliminary injunction. ...........................18

CONCLUSION...........................................................................................24

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*AbbVie, Inc. v. Fitch,*
    152 F.4th 635 (5th Cir. 2025)................................................................................22

*AbbVie, Inc. v. Murrill,*
    Nos. 24-30645, 24-30651, 24-30673, 2026 WL 350685 (5th Cir. Feb. 9, 2026) .......22

*Astra USA, Inc. v. Santa Clara County,*
    563 U.S. 110 (2011) ................................................................2, 3, 5, 15–16

*Boehringer Ingelheim Pharms., Inc. v. HHS,*
    150 F.4th 76 (2d Cir. 2025) ....................................................................16

*Boeing Co. v. Movassaghi,*
    768 F.3d 832 (9th Cir. 2014) ..................................................................13

*Dawson v. Steager,*
    586 U.S. 171 (2019) ................................................................ 14, 17, 20

*Goodyear Atomic Corp. v. Miller,*
    486 U.S. 174 (1988) ................................................................................18

*McCulloch v. Maryland,*
    17 U.S. (4 Wheat.) 316 (1819).......................................................11, 18, 20

*North Dakota v. United States,*
    495 U.S. 423 (1990) ................................................................................14

*Novartis Pharms. Corp. v. Johnson,*
    102 F.4th 452 (D.C. Cir. 2024).................................................................7, 12

*Paul v. Monts,*
    906 F.2d 1468 (10th Cir. 1990) (per curiam) ......................................... 19

*Pharmaceutical Care Mgmt. Ass'n v. Mulready*,
   78 F.4th 1183 (10th Cir. 2023) ................................................................. 11

*Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*,
   95 F.4th 1136 (8th Cir. 2024)..............................................................20, 21

*Pharmaceutical Rsch. & Mfrs. of Am. v. Walsh*,
   538 U.S. 644 (2003) ...........................................................................12

*Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*,
   361 U.S. 376 (1960) ...........................................................................11

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
   547 U.S. 47 (2006) ............................................................................21

*Sanofi Aventis U.S. LLC v. HHS*,
   58 F.4th 696 (3d Cir. 2023) ...............................................................7, 12

*Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Bd.*,
   474 U.S. 409 (1986) ...........................................................................19

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019)........................................................14, 17, 20

*United States v. King County*,
   122 F.4th 740 (9th Cir. 2024)..............................................................13

*United States v. Washington*,
   596 U.S. 832 (2022) ...................................................................11, 13, 19

*Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
   475 U.S. 282 (1986) ...........................................................................18

**Statutes:**

Patient Protection and Affordable Care Act,
   Pub. L. No. 111-148, tit. VII, subtitle B, 124 Stat. 119 (2010) .............................3, 15

Veterans Health Care Act of 1992,
  Pub. L. No. 102-585, tit. VI, § 602, 106 Stat. 4943, 4967–71
  (codified at 42 U.S.C. § 256b) ...................................................................2
  42 U.S.C. § 256b ........................................................................... 1, 2, 11
  42 U.S.C. § 256b(a)(1) ...................................................................... 1, 3, 4
  42 U.S.C. § 256b(a)(1)-(2) ...........................................................................4
  42 U.S.C. § 256b(a)(3) ...............................................................................3
  42 U.S.C. § 256b(a)(4) ...............................................................................3
  42 U.S.C. § 256b(a)(5) ...............................................................................4
  42 U.S.C. § 256b(a)(5)(A) ..........................................................................4
  42 U.S.C. § 256b(a)(5)(B) ..........................................................................4
  42 U.S.C. § 256b(a)(5)(C) ..........................................................................4
  42 U.S.C. § 256b(d)(1)(B)(i) .......................................................................6
  42 U.S.C. § 256b(d)(1)(B)(vi) ................................................................5, 6
  42 U.S.C. § 256b(d)(2)(B)(v) .......................................................................4
  42 U.S.C. § 256b(d)(3) ...............................................................................5

10 U.S.C. § 983(b) ....................................................................................21

28 U.S.C. § 517 .........................................................................................1

42 U.S.C. §§ 1320f–1320f-7 .....................................................................18

42 U.S.C. § 1396r-8 ..............................................................................2, 18

42 U.S.C. § 1396r-8(a)(1) .........................................................................17

42 U.S.C. § 1396r-8(b)(4)(B)(i) ..................................................................5

42 U.S.C. § 1396r-8(b)(4)(B)(iv) ................................................................5

42 U.S.C. § 1396r-8(c) ...............................................................................2

Colorado 340B Contract Pharmacy Protection Act,
  Laws 2025, ch. 313 (2025) (codified at Colo. Rev. Stat. §§ 6-29-101–105)................8
  Colo. Rev. Stat. §§ 6-29-101–105 ...............................................................8
  Colo. Rev. Stat. § 6-29-102 ...................................................................9, 16

Colo. Rev. Stat. § 6-29-103 ............................................................................... 8, 9
Colo. Rev. Stat. § 6-29-105 ................................................................................. 9

Colo. Rev. Stat. § 6-1-112 ................................................................................... 9

Colo. Rev. Stat. § 6-1-113 ................................................................................... 9

Ark. Code Ann. § 23-92-604(c) ........................................................................ 20

La. Stat. Ann. § 40:2884 ................................................................................... 22

**Regulations:**

42 C.F.R. § 10.10 ............................................................................................... 4

42 C.F.R. §§ 10.20–10.24 .................................................................................. 5

42 C.F.R. § 10.21(a)(1) ................................................................................... 5, 16

42 C.F.R. pt. 447 ............................................................................................... 2

**Rule:**

Fed. R. App. P. 29(a) ......................................................................................... 1

**Legislative Materials:**

H.R. Rep. No. 102-384, pt. 2 (1992) .................................................................. 2

Miss. H.B. 728 § 4(1)–(2) (2024) ..................................................................... 22

**Other Authorities:**

61 Fed. Reg. 43,549 (Aug. 23, 1996) .................................................................. 6

72 Fed. Reg. 1540 (Jan. 12, 2007) ...................................................................... 6

75 Fed. Reg. 10,272 (Mar. 5, 2010) .................................................................... 6

Bausch Health Cos., Quarterly Report (Form 10-Q) (Oct. 30, 2025) ........................ 17

Health Res. & Servs. Admin.,
   2024 340B Covered Entity Purchases (Dec. 2025),
   https://perma.cc/9EUU-B446 ............................................................................5

N.Y. State Dep't of Health,
   *Medicaid NYRx, Discontinued Drug Coverage for Terminated Labelers Per*
   *Medicaid National Drug Rebate Agreement* (Sept. 16, 2025),
   https://perma.cc/C6DY-7A3U ..........................................................................17

**GLOSSARY**

Act                    Colorado 340B Contract Pharmacy Protection Act

HHS                    Department of Health and Human Services

## INTRODUCTION AND INTEREST OF AMICUS CURIAE

Pursuant to 28 U.S.C. § 517 and Federal Rule of Appellate Procedure 29(a), the United States files this brief as amicus curiae in support of appellants. The federal government has a strong interest in the smooth functioning of the drug-discount program established by Section 340B of the Public Health Service Act, 42 U.S.C. § 256b. But the Colorado law at issue here interferes with and obstructs it.

Section 340B requires pharmaceutical manufacturers participating in Medicare Part B and Medicaid to sign agreements with the Secretary of Health and Human Services (HHS), under which they agree to offer to sell drugs at reduced prices to certain healthcare providers known as "covered entities." 42 U.S.C. § 256b(a)(1). In regulating manufacturers' participation in the 340B program, Colorado seeks to supplement the regulatory scheme Congress created.

States may not discriminate against those who participate in a federal scheme; such laws inhibit the federal government's interest in promoting participation in its programs. Nor may States interfere with the scheme that Congress created to enforce Section 340B's requirements. Yet Colorado's law requires manufacturers who participate in the 340B Program—and only those manufacturers—to bear additional burdens imposed not by Congress but by Colorado. And the State's law supplants the

enforcement mechanism that Congress authorized. For those reasons, the Supremacy Clause forbids its enforcement. The judgment below should therefore be reversed.

## STATEMENT OF THE CASE

### A.    The 340B Program

1. Since 1990, pharmaceutical manufacturers that participate in Medicaid have been required to "provide rebates to States on their Medicaid drug purchases." *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 114 (2011); *see* 42 U.S.C. § 1396r-8. These rebates provide States with a discount, which for most "brand-name drugs" is equivalent to the difference between the average wholesale price and the lowest price at which the manufacturer sells the drug, known as the "best price." *See* 42 U.S.C. § 1396r-8(c); 42 C.F.R. pt. 447.

The creation of this program gave rise to a concern that manufacturers had reduced the discounts they were giving to safety-net providers in order to raise the "best price" figures for their drugs under Medicaid and lower their rebate payments to States. *See* H.R. Rep. No. 102-384, pt. 2, at 10–12 (1992). Congress responded by creating the 340B Program to govern the prices that drug manufacturers may charge providers that offer health care to underserved individuals, Veterans Health Care Act of 1992, Pub. L. No. 102-585, tit. VI, § 602, 106 Stat. 4943, 4967–71 (codified at 42 U.S.C. § 256b), and

2

it later expanded the scope of that program, Patient Protection and Affordable Care Act, Pub. L. No. 111-148, tit. VII, subtitle B, 124 Stat. 119, 821–28 (2010). Unlike Medicaid, the 340B Program is not a cooperative State-federal program.

Under Section 340B, pharmaceutical manufacturers participating in Medicaid and in Medicare Part B (which covers physician-administered drugs) "must offer discounted drugs to covered entities, dominantly, local facilities that provide medical care for the poor." *Astra USA,* 563 U.S. at 115; *see* 42 U.S.C. § 256b(a)(1), (3), (4). Covered entities include, for example, federally qualified health centers, certain children's hospitals and free-standing cancer hospitals, critical access hospitals, rural referral centers, black lung clinics, and other federally funded health care entities. 42 U.S.C. § 256b(a)(4).

Section 340B implements these discounted-pricing requirements through "uniform agreements that recite the responsibilities [Section] 340B imposes, respectively, on drug manufacturers and the Secretary of HHS." *Astra USA*, 563 U.S. at 113. These "are not transactional, bargained-for contracts" but rather "simply incorporate statutory obligations and record the manufacturers' agreement to abide by them." *Id.* at 113, 118. Section 340B directs HHS to enter into pricing agreements providing that "the amount required to be paid (taking into account any rebate or

3

discount, as provided by the Secretary) to the manufacturer for covered outpatient drugs ... purchased by a covered entity" may not exceed a specified ceiling price. 42 U.S.C. § 256b(a)(1). For covered outpatient drugs, the ceiling price is equivalent to the average manufacturer price less the rebate the manufacturer provides to States. *Id.* § 256b(a)(1)–(2); 42 C.F.R. § 10.10.

Section 340B also imposes a pair of substantive requirements on covered entities, prohibiting (1) duplicate discounts and (2) the diversion of drugs purchased under the 340B Program. 42 U.S.C. § 256b(a)(5). To prevent duplicate discounts, the statute specifies that a covered entity shall not request a discount for a drug that is already subject to a separate Medicaid rebate requirement. *Id.* § 256b(a)(5)(A). And to prevent diversion, the statute specifies that "a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity." *Id.* § 256b(a)(5)(B).

To promote transparency, Section 340B requires a covered entity to permit both HHS and the manufacturer to audit the entity's records. 42 U.S.C. § 256b(a)(5)(C). Congress authorized HHS to impose sanctions against covered entities—including monetary penalties, removal from the 340B Program, and referral to other federal agencies for appropriate action—for diversion, duplicate discounts, or other violations of Program requirements. *Id.* § 256b(d)(2)(B)(v). Congress amended Section 340B to

4

expressly require HHS to create an administrative dispute resolution process under which disputes between manufacturers and covered entities may be resolved through a 340B administrative process. *See id.* § 256b(d)(3); 42 C.F.R. §§ 10.20–10.24. For example, a covered entity may ask HHS to adjudicate claims "that it has been overcharged by a manufacturer for a covered outpatient drug, *including claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price*." 42 C.F.R. § 10.21(a)(1) (emphasis added).

If a manufacturer fails to comply with its 340B requirements, HHS may impose civil penalties and may also terminate "the manufacturer's eligibility for Medicaid coverage of its drugs." *Astra USA*, 563 U.S. at 115–16; *see* 42 U.S.C. §§ 256b(d)(1)(B)(vi), 1396r-8(b)(4)(B)(i), (v).

2. The 340B Program accounts for a significant portion of prescription drug spending in the United States. In 2024, "covered entities purchased $81.4 billion in covered outpatient drugs under the 340B Program." Health Res. & Servs. Admin., 2024 340B Covered Entity Purchases (Dec. 2025), https://perma.cc/9EUU-B446. That sum represents approximately 16.5% of total prescription drug spending nationwide and it represents an even larger proportion of outpatient drug sales. *See id.*

Many covered entities rely on outside pharmacies, known as "contract

pharmacies," to dispense to their patients the drugs purchased at the discounted prices.

Congress gave HHS specific rulemaking authority with respect to only limited aspects

of the 340B Program that do not include these contract-pharmacy arrangements. *See*

42 U.S.C. § 256b(d)(1)(B)(i), (1)(B)(vi), (3). However, HHS periodically issued

nonbinding guidelines on that topic. *See, e.g.*, 61 Fed. Reg. 43,549, 43,550 (Aug. 23,

1996) (explaining that "these guidelines create no new law and create no new rights or

duties").

In an initial set of guidelines, HHS advised that a covered entity should contract

with only one pharmacy to provide all pharmacy services for any particular site of the

covered entity. 61 Fed. Reg. at 43,555. Starting in 2001, however, HHS began a pilot

program under which covered entities used multiple contract pharmacies to increase

their patients' access to 340B drugs. 72 Fed. Reg. 1540, 1540 (Jan. 12, 2007). After

studying the results from that pilot program, in 2010, HHS issued guidelines indicating

that covered entities could use multiple contract pharmacies as long as the covered

entities complied with guidelines to prevent duplicate discounts and diversion through

adhering to policies regarding the definition of a "patient" of a covered entity. 75 Fed.

Reg. 10,272, 10,273 (Mar. 5, 2010). After HHS issued this guidance, the use of contract

6

pharmacies "increased twentyfold." *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 700 (3d Cir. 2023). "According to drug manufacturers, these partnerships have left the section 340B program vulnerable to abuse—at great cost to the manufacturers." *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 455 (D.C. Cir. 2024).

Beginning in 2020, a number of the country's largest drug manufacturers announced that they would cease shipping discounted drugs to contract pharmacies used by covered entities, unless various conditions were met. *See Sanofi Aventis*, 58 F.4th at 700–01. In response, HHS asserted that "drug makers must deliver discounted drugs to an unlimited number of contract pharmacies" to comply with their 340B obligations. *See id.* at 701. Many manufacturers sued, and two courts of appeals rejected HHS's reading of Section 340B. *See id.* at 703–06; *Novartis* , 102 F.4th at 464. The D.C. Circuit held that manufacturers may impose some reasonable conditions on their offers to sell drugs to covered entities, including limits on the number of contract pharmacies each covered entity may use. *Novartis*, 102 F.4th at 464. And the Third Circuit held that nothing in the text of Section 340B prevented manufacturers from creating such limits. *Sanofi Aventis*, 58 F.4th at 706.[1]

---

[1] A parallel case is still pending in the Seventh Circuit. *Eli Lilly v. Kennedy*, No. 21-3128 (7th Cir. argued Oct. 31, 2022).

Following that litigation, many States, including Colorado, stepped in and attempted to regulate in HHS's stead.

**B.      The Colorado 340B Contract Pharmacy Protection Act**

In May 2025, Colorado enacted the Colorado 340B Contract Pharmacy Protection Act, Laws 2025, ch. 313 (2025) (codified at Colo. Rev. Stat. §§ 6-29-101– 105) (Act). The Act specifically regulates and is limited to participants in the 340B Program. *See* Colo. Rev. Stat. § 6-29-104 ("This article 29 applies to a manufacturer, third-party logistics provider, or repackager of a manufacturer's drugs doing business in this state and engaged in the production, manufacture, distribution, or sale of a 340B drug in this state.").[2]

As relevant here, it prohibits 340B-participating pharmaceutical manufacturers (and other related entities) from:

> directly or indirectly, deny[ing], restrict[ing], prohibit[ing], discriminat[ing] against, or otherwise limit[ing] the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B covered entity, a

---

[2] Under the Act, "'340B drug' means a drug that: (a) [i]s a covered outpatient drug within the meaning set forth in 42 U.S.C. sec. 256b; (b) [h]as been subject to any offer for reduced prices by a manufacturer pursuant to 42 U.S.C. sec. 256b(a)(1); and (c) [i]s purchased by a covered entity." Colo. Rev. Stat. § 6-29-103(2).

pharmacy contracted with a 340B covered entity, or a location otherwise authorized by a 340B covered entity to receive and dispense 340B drugs.[3]

Colo. Rev. Stat. § 6-29-105(1)(a). It also prohibits pharmaceutical manufacturers from:

> directly or indirectly requir[ing], including as a condition, a 340B covered entity, a pharmacy contracted with a 340B covered entity, or any other location authorized to receive 340B drugs by a 340B covered entity to submit any health information, claims or utilization data, purchasing data, payment data, or other data that does not relate to a claim submitted to a federal health care program, unless such data is voluntarily furnished by such covered entity or otherwise required to be furnished under applicable federal law.

*Id.* § 6-29-105(1)(b). An entity that violates these provisions is subject to civil penalties and damages. *Id.* § 6-29-105(3)(a); *see id.* §§ 6-1-112–113.

The Colorado Legislature explained that it enacted the Act because it determined that "[s]tarting in 2020, pharmaceutical manufacturers began to unlawfully place restrictions on 340B covered entities using contract pharmacies to dispense drugs to patients." Colo. Rev. Stat. § 6-29-102(1)(n).

The Act took effect on August 6, 2025. Colo. Rev. Stat. § 6-29-105(1).

---

[3] Under the Act " 'covered entity' has the meaning set forth in section 340B(a)(4) of the federal 'Public Health Service Act.' " Colo. Rev. Stat. § 6-29-103(1).

C.     **Prior Proceedings**

A pharmaceutical manufacturer sued to challenge the Act and sought a preliminary injunction. App. 236.[4] The district court denied their motion. App. 258.

The district court concluded that the Act is not preempted by Section 340B. App. 249–57. The court rejected the argument that Colorado had improperly "recalibrate[d] the benefits and burdens of participation in Section 340B," because it saw "no evidence that Congress considered whether drug manufacturers would participate in Section 340B if the program was too expensive." App. 252. The district court also rejected the argument that Colorado had improperly targeted 340B-participating manufacturers for additional regulation. App. 253. The court reasoned that the Act does not interfere with the federal enforcement scheme because it only creates enforcement authority for violations of the Act, not violations of the federal law. App. 254–55. Finally, the court concluded that the Act's restrictions on requiring claims data do not conflict with Section 340B. App. 255–56.

The court further rejected plaintiff's argument that federal patent laws preempt the Act. App. 257–58.

---

[4] Citations to "App." refer to the appellant's appendix.

10

## ARGUMENT

**I.    The Supremacy Clause prohibits Colorado from enforcing the Act.**

   **A.    Colorado's law is preempted by Section 340B and violates the intergovernmental immunity doctrine.**

1. The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 596 U.S. 832, 838 (2022). Thus, States may not "regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *Id.* (cleaned up); *see also Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 387 (1960) (State may not discriminate against lessee of federal property). Similarly, the Supremacy Clause permits Congress to preempt state law "impliedly, by legislating in such a way to crowd out related state laws." *Pharmaceutical Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1193 (10th Cir. 2023). In cases such as these, the principles of intergovernmental immunity and preemption often overlap, but, under either framework, a State cannot intercede in the execution of the laws Congress enacts. *See Washington*, 596 U.S. at 838 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)).

Congress has delineated the terms of the 340B Program. *See* 42 U.S.C. § 256b. As provided by Congress, manufacturers must sign agreements with HHS memorializing their obligation to charge covered entities no more than a statutory ceiling price for

11

340B drugs sales; the agreements also require manufacturers to actually offer the drugs for sale to covered entities. *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 699–700 (3d Cir. 2023) (citing 42 U.S.C. § 256b(a)(1)). Two courts of appeals have rejected HHS's argument that the statute read as a whole prohibits manufacturers from setting conditions on how pharmaceutical manufacturers deliver drugs to covered entities. *See id.* at 704–06; *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 464 (D.C. Cir. 2024). Colorado attempts to recreate that achieve a contrary result through state law, but Congress left no role for States in determining manufacturers' 340B obligations.[5]

Colorado's enactment violates principles of intergovernmental immunity because it impermissibly targets and discriminates against manufacturers that participate in a federal program. The Act applies specifically and exclusively to such manufacturers: It is triggered by participation in the 340B Program. *See* Colo. Rev. Stat. § 6-29-104. A manufacturer doing business in Colorado subjects itself to the Act only so long as it participates in the 340B Program; if it opts out of the 340B Program, it frees itself from the constraints of the Act. The scope of the Act, therefore, directly

---

[5] The 340B Program is thus unlike other federal health programs like Medicaid, which "give[] the States substantial discretion" in determining how to operate a cooperative endeavor with the federal government. *Pharmaceutical Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 665 (2003) (plurality opinion) (quotation marks omitted).

discriminates against manufacturers who have 340B Agreements with the federal

government. Nor does Colorado impose similar obligations on similarly situated

pharmaceutical manufacturers who do not participate in the 340B Program. The

Supremacy Clause, however, forbids States from "singl[ing] … out for less favorable

treatment," those who do business with the federal government and from "regulat[ing]

them unfavorably on some basis related to their governmental status," *Washington*, 596

U.S. at 839 (quotation marks omitted).  The manufacturers "cannot be subjected to

discriminatory regulations because [they] contracted with the federal government."

*Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014).

The Act facially violates that constitutional stricture by imposing additional

burdens on manufacturers who participate in the 340B Program. *See Washington*,

596 U.S. at 839 (deeming law discriminatory because "[o]n its face" it "explicitly treats

federal workers differently than state or private workers"); *see also United States v. King

County*, 122 F.4th 740, 757 (9th Cir. 2024). When a state law directly targets the federal

government or those with whom it does business, the law is invalid. *See, e.g., Boeing*, 768

F.3d at 842-43 (state law that "specifically targets" federal contract because of federal

activity is invalid). A State could not levy a special tax only on landlords that accept

federal housing subsidies, or require physicians to use costlier diagnostic tests only for

13

Medicare patients, or impose heightened liability rules only on contractors who do business with Immigration and Customs Enforcement. Colorado's attempt to regulate and burden 340B participation is no different.

The Supreme Court's decision in *Dawson v. Steager*, which applied an intergovernmental tax immunity statute, confirms these basic principles. 586 U.S. 171, 173 (2019). *See id.* (explaining that the statute at issue "codifies" the "legal doctrine" of intergovernmental immunity set out in *McCulloch*); *see also United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) (citing *North Dakota v. United States*, 495 U.S. 423, 434–39 (1990) (plurality opinion)) ("[T]he principles of the intergovernmental tax immunity doctrine apply to the general intergovernmental immunity doctrine"). The Court invalidated a West Virginia law which provided identically situated state retirees with tax benefits unavailable to federal employees, *Dawson*, 586 U.S. at 175, explaining that a State's laws must "treat[ ] those who deal with the federal government as well as it treats those with whom the State deals itself," *id.* at 177 (cleaned up). Because the West Virginia law had the effect of treating federal retirees worse, the Court concluded it was unlawful under the Supremacy Clause. *Id.* at 180. The same logic applies to the Act, which treats manufacturers with 340B agreements worse than manufacturers who do not participate in the 340B Program; the same conclusion thus follows.

14

Colorado's enactment interferes with Congress's design for the 340B Program in another critical way. "Congress vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role to covered entities" or to States. *See Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 117 (2011). Instead, it "centralized enforcement in the [federal] government" to avoid "the risk of conflicting adjudications." *Id.* at 119–20 (quotation marks omitted). Congress chose this "unitary administrative and enforcement scheme" because it intended for HHS to "administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis," in recognition that "an adjudication of rights under one program must proceed with an eye towards any implications for the other." *Id.* at 120 (quotation marks omitted).  In *Astra*, the Supreme Court recognized that "[f]ar from assisting HHS," resort to state law remedies to resolve 340B disputes "would undermine" Congress's intent to create a uniform system. *See id.*

This general principle about 340B enforcement is particularly applicable in this context. The Supreme Court decided *Astra* shortly after the enactment of the Affordable Care Act, in which Congress directed HHS to create a formal dispute resolution procedure, institute refund and civil monetary penalty systems, and perform audits of manufacturers, Pub. L. No. 111-148, 124 Stat. at 823–27. *See Astra*, 563 U.S.

15

at 116 (recognizing that new dispute-resolution procedures were forthcoming). This dispute-resolution scheme expressly encompasses "claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price." 42 C.F.R. § 10.21(a)(1). The Act supplants that scheme, and Colorado acknowledges as much. The Colorado Legislature enacted the Act because it believed the manufacturers' restrictions on the use of contract pharmacies were "unlawful[ ]." Colo. Rev. Stat. § 6-29-102(1)(n). The Act is expressly intended to arrogate to the State enforcement authority that properly belongs to the federal government alone. That act of self-aggrandizement conflicts with the scheme Congress designed.

### B. State laws like the Act risk disincentivizing Medicare and Medicaid participation.

Participation in Medicaid, and with it, participation in the 340B Program, is voluntary. *See Boehringer Ingelheim Pharms., Inc. v. HHS*, 150 F.4th 76, 88 n.7 (2d Cir. 2025) (collecting cases). Manufacturers make a business decision to participate. As a result, the manufacturers, the federal government, and millions of patients end up better off. *Cf. id.* at 92 n.11 (noting harmful effect of manufacturer's potential withdrawal from Medicare program).

16

If the costs of participating in these programs outstrip the benefits, however, rational manufacturers can be expected to withdraw from them. Indeed, Bausch Health recently voluntarily withdrew from Medicaid and the 340B Program and attributed its decision to recent "legislative changes." *See* Bausch Health Cos., Quarterly Report (Form 10-Q), at 53 (Oct. 30, 2025). As a result, the dozens of drugs Bausch previously supplied to Medicaid patients—including important medications used to treat gastrointestinal and neurological diseases—are no longer available through Medicaid. *E.g.*, Medicaid NYRx, N.Y. State Dep't of Health, *Discontinued Drug Coverage for Terminated Labelers Per Medicaid National Drug Rebate Agreement* (Sep. 16, 2025), https://perma.cc/C6DY-7A3U; *see* 42 U.S.C. § 1396r-8(a)(1). If the costs of participation continue to rise, other manufacturers might also withdraw.

The determination of what conditions to impose on 340B-participating manufacturers rests with Congress, not the States. Only the federal government can determine the extent to which it will tolerate the risk of manufacturer withdrawal. For several reasons, this principle holds true regardless of whether Colorado's regulations are significant enough to alter any manufacturer's cost-benefit analysis. To start, there is no de minimis exception to the intergovernmental immunity doctrine. *See Dawson*, 586 U.S. at 176; *see also California*, 921 F.3d at 883–84. The Supremacy Clause permits no

17

amount of discrimination against the federal government, for "[a] question of constitutional power can hardly be made to depend on a question of more or less," *McCulloch*, 17 U.S. (4 Wheat.) at 327. Moreover, if Colorado can impose additional conditions on the 340B Program, so can the other States. *See Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 288 (1986). Indeed, other States are continuing to do so.

The 340B Program is not the only potentially costly obligation borne by pharmaceutical manufacturers who participate in Medicare and Medicaid. These same manufacturers, for example, are also obligated to participate in the Medicaid Drug Rebate Program, *see* 42 U.S.C. § 1396r-8, and the Medicare Drug Price Negotiation Program, *id.* §§ 1320f–1320f-7. Because manufacturers consider these costs cumulatively when deciding whether to participate in Medicare and Medicaid, so must Congress. Patchwork state regulation, however, does not facilitate that kind of wide-angle study. Congress properly determines what conditions should attach to 340B Program participation, and Colorado is not free to supplement that scheme.

## II.    The district court erred in denying a preliminary injunction.

1. The district court erred in concluding that the Act may coexist with Section 340B. The district court believed that because Congress was silent about how

manufacturers would deliver drugs to covered entities, it left room for the States to regulate. *See* App. 249–52. Congressional silence ordinarily defeats preemption arguments. *See Paul v. Monts*, 906 F.2d 1468, 1475 n.8 (10th Cir. 1990) (per curiam) . But that rule depends on context. *See, e.g.*, *Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Bd.*, 474 U.S. 409, 422 (1986) (Congress's decision to limit federal agency's regulatory power "has little to do with whether state regulations … impermissibly intrude upon federal concerns"). In light of the reticulated scheme Congress created here, the context does not suggest that Congress left States free to layer on regulations. And more pertinently, to authorize regulations that discriminate against the federal government or those with whom it does business, Congress must speak expressly. *See Washington*, 596 U.S. at 839-40; *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988*)*. Congressional silence therefore does not permit States to target participants in federal programs for additional regulation.

The district court also reasoned that States may target those who do business with the federal government so long as the state law "does not interfere with Section 340B's objectives, but instead helps to achieve them." App. 253. The Supremacy Clause, however, permits no discrimination against those who do business with the

19

Federal Government. *See Dawson*, 586 U.S. at 176; *California*, 921 F.3d at 883–84; *see also McCulloch*, 17 U.S. (4 Wheat.) at 327.

2. Other circuits have similarly erred in failing to hold similar state enactments preempted.[6] The Eighth Circuit rejected a preemption challenge to an Arkansas law[7] that operates similarly to the Act. *See PhRMA v. McClain*, 95 F.4th 1136, 1146 (8th Cir. 2024). The Eighth Circuit concluded that Congress left room for States to regulate alongside the 340B Program because States traditionally regulate pharmacies. *See id.* at 1143–44. State laws targeting contract-pharmacy arrangements do not regulate the safety of prescription drugs or pharmacy operations or even state contracts. It operates only within the 340B Program. If two transactions for the same drugs occur between the same manufacturers, pharmacies, and providers but one prescription is dispensed to a 340B-eligible patient and the second prescription is not, the Act applies only to the first transaction. That sort of targeted regulation of participation in a federal program does not survive constitutional scrutiny just because some other generally applicable

---

[6] The United States did not file amicus briefs in these earlier cases, so the courts of appeals did not have the benefit of the federal government's views in reaching their decisions.

[7] The Arkansas law prohibited manufacturers from refusing to provide drugs to covered entities or their contract pharmacies at the 340B ceiling price. *McClain*, 95 F.4th at 1143 (citing Ark. Code Ann. § 23-92-604(c)).

exercise of the State's police power could be permissible. For example, Congress may require as a condition of receiving federal funds that universities provide the military with equal access to on-campus recruiting. 10 U.S.C. § 983(b); *see Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006). A State also could require all universities subject to its jurisdiction to provide equal access to recruiters for state agencies. But a State could not condition a university's receipt of *federal* funds on its providing access to *state* recruiters. That, however, is just the sort of condition Colorado seeks to impose here.

The Eighth Circuit also concluded that because the Arkansas law regulated the relationship between contract pharmacies and manufacturers rather than between covered entities and manufacturers, it did not conflict with federal law. *McClain*, 95 F.4th at 1144. But whether the condition applies to how the manufacturer deals with the covered entity or the contract pharmacy is similarly irrelevant. The relevant question is whether the State has targeted those who participate in a federal program for additional regulation.

The Fifth Circuit similarly erred in rejecting challenges to Mississippi and

Louisiana statutes,[8] which parallel the Act. *See AbbVie, Inc. v. Fitch*, 152 F.4th 635 (5th

Cir. 2025) (per curiam); *AbbVie, Inc. v. Murrill*, Nos 24-30645, 24-30651, 24-30673,

2026 WL 350685 (5th Cir. Feb. 9, 2026). The Fifth Circuit adopted reasoning similar

to that of the Eighth Circuit in *McClain*, which lacks merit for the same reasons. *See*

*Fitch*, 152 F.4th at 646–48; *see also Murrill*, 2026 WL 350685, at *5–7 (applying *Fitch*).

But the Fifth Circuit also introduced new errors into its analysis. For example, the Fifth

Circuit saw "no dominant federal interest" in the regulated field, *Fitch*, 152 F.4th at

646, even though the federal interest in determining the costliness of Medicare and

Medicaid participation could hardly be stronger, *see supra* pp. 16–18.

In *Murrill*, the Fifth Circuit rejected the argument that Louisiana's statute

"skews the program's delicate balance of statutory objectives because Act 358 applies

only to 340B participants." 2026 WL 350685, at *7 (cleaned up). That conclusion,

however, rested entirely on statutory silence. *See id.* ("Congress decided not to

---

[8] The Mississippi law prohibited manufacturers from refusing to provide 340B drugs to covered entities through contract pharmacies at the 340B ceiling price. *Fitch*, 152 F.4th at 641 (citing Miss. H.B. 728 § 4(1)–(2) (2024)). The Louisiana law prohibited manufacturers from refusing to provide 340B drugs to contract pharmacies and from interfering with contract pharmacies. *Murrill*, 2026 WL 350685, at *3 & n.17 (citing La. Stat. Ann. § 40:2884).

22

undertake regulation of the delivery of 340B drugs or the role of pharmacies in that process—thereby leaving, absent congressional amendment, those matters to state law."). The Fifth Circuit failed to recognize that the States lack authority to discriminate against those who do business with the federal government. And it summarily dismissed the costs that the state law imposes on manufacturers. Whether to impose such costs, however, is a choice for Congress, not the States.

***

When Congress set out the terms of the 340B Program, it made a series of policy choices concerning how much of a burden to impose on manufacturers and what benefits to offer covered entities. It further directed HHS to create a dispute resolution mechanism to resolve whether manufacturers are shirking their 340B obligations. But Congress did not invite the States to discriminate against manufacturers on the basis of their 340B participation or to supplant the enforcement mechanism that Congress authorized. Because the Act does so, it violates the Supremacy Clause.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

*Of Counsel:*

ELIZABETH C. KELLEY
*Deputy General Counsel*
*U.S. Department of Health and*
*Human Services*

YAAKOV M. ROTH
*Principal Deputy Assistant*
*Attorney General*

MICHAEL S. RAAB

*/s/ Maxwell A. Baldi*

MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*
*maxwell.baldi@usdoj.gov*

MARCH 2026

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,929 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in EB Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
Maxwell A. Baldi